CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

FEB 27 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION**

UNITED STATES OF AMERICA,

v.

LOUIS ANTONIO BRYANT,

*Defendant.*

CRIMINAL CASE NO. 3:04-CR-00047

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

This matter comes before the Court on Defendant's Renewed Motion to Set Bond, filed on February 1, 2006. Defendant argues that nearly nineteen months of pretrial detention has violated his substantive due process rights. The Government filed a motion in opposition on February 23, 2006. For the reasons stated below, Defendant's motion will be denied.

## I. BACKGROUND

On July 14, 2004, Defendant was charged with one count of conspiracy to distribute more than 50 grams of crack cocaine and other controlled substances in violation of 21 U.S.C. § 846, and with one count of using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Following a July 28, 2004 bond hearing, United States Magistrate Judge B. Waugh Crigler entered an Order of Detention Pending Trial. Judge Crigler found probable cause to believe that Defendant had committed both offenses, and that Defendant had not rebutted the presumption thereby created[1] that no condition or combination of conditions

---

[1] *See* 18 U.S.C.A. § 3142(e).

1

would reasonably assure his appearance and the safety of the community. (July 28, 2004 Pretrial Detention Order).

On December 7, 2004, Defendant filed a Motion to Reconsider the denial of bond and a supplement thereto, arguing that (1) his criminal record had been exaggerated at the July 28, 2004 bond hearing; (2) his mother confirmed that local employment was available for him; (3) his aunt would allow him to live with her; and (4) he has strong family support and ties in the Charlottesville community. Judge Crigler held a hearing on December 16, 2004, and again denied bond.

Defendant appealed Judge Crigler's denial of bond to this Court and requested a hearing. Before the hearing was held, the Government filed a superceding indictment on February 16, 2005. In addition to the two counts contained in the original indictment, Defendant was charged with (1) occupying a position as organizer of a continuing criminal enterprise, in violation of 21 U.S.C. §848; (2) conspiring to participate in a violent drug organization in violation of the Racketeering Influenced and Corrupt Organizations Act;(3) five counts of attempted murder in aid of racketeering; (4) two counts of threatening to murder in aid of racketeering; and (5) one count of possession with intent to distribute marijuana. On February 25, 2005, Defendant was arraigned and the Court denied Defendant's motion for bond, finding that he posed a flight risk and a danger to the community. (Feb. 25, 2005 Crim. Minutes).

Trial was scheduled to begin on March 21, 2005. However, pursuant to 18 U.S.C. §3161(h)(7), (h)(8)(A), and (h)(8)(B)(ii), the Court found that the ends of justice would be served by continuing the trial due to the unusual complexity of the case, which involves twenty co-Defendants. (Order, March 31, 2005). Defendant opposed the 180-day duration of the Speedy

2

Trial Continuance requested by the Government on May 3, 2005. (May 10, 2005 Brief in Opp.). Due to the expected length of the trial and the difficulty of reconciling the schedules of the attorneys involved in the case, trial was rescheduled to commence on October 31, 2005. (Order, May 20, 2005). On May 30, 2005, Defendant again moved for bond in light of the trial date, citing as grounds the duration of his pretrial detention and the alleged violation of his speedy trial rights. The Court again denied bond, finding that continuation of the trial date did not affect its previous determination that Defendant poses a flight risk and is a danger to the community and that Defendant had failed to rebut § 3142(e)'s presumption. (Op. & Order, June 23, 2005).

On June 22, 2005, the trial date was again reset, to November 7. On November 4, 2005, Defendant and three remaining co-defendants sought and obtained a further continuance of one week, and the trial commenced on November 14, 2005. Following the presentation of evidence at trial by all parties, a juror informed the Court that another juror had read news coverage of the trial and related his opinion of that coverage to two other jurors. Defendant and his co-defendants requested a mistrial. The United States opposed the mistrial, recommending that the trial continue with replacement of the offending juror and a curative instruction to the remaining panel members. A mistrial was declared on November 30, 2005.

The Government sought a March retrial date. (Gov't Opp. at 3). However, in mid-December, Defendant filed a motion and supplements thereto to re-try the case after April 20, 2006, to accommodate counsel's schedule and his need to observe a religious ceremony following the birth of his son. Defendant and the remaining co-defendants filed speedy trial waivers, and the retrial was set for May 7, 2006.

Nearly nineteen months have elapsed since the initial pretrial detention order of July 28,

3

2004, and nearly twenty-two months will have passed by the time trial is scheduled to end.

## II. DISCUSSION

Before the Court is Defendant's most recent Motion to Set Bond, filed on February 1, 2006. In support of his motion, Defendant argues that the duration of his pre-trial detention violates his due process rights and that he poses minimal flight risk as a longstanding Charlottesville resident. He proposes 24-hour home confinement at the home of his aunt, who lives within a mile of the courthouse, as an alternative to continued pretrial detention.

A. Bail Reform Act

Title 18, section 3142(e) authorizes a judicial officer, after a hearing, to order pretrial detention upon a finding that "no condition or combination of conditions will reasonably assure the appearance of the [defendant] . . . and the safety of any other person and the community." A defendant may be detained only if this finding is supported by "clear and convincing evidence." 18 U.S.C. §3142(f). A rebuttable presumption in favor of this finding arises if the officer has probable cause to believe that defendant committed enumerated offenses carrying a maximum penalty of 10 or more years or certain other offenses. 18 U.S.C. §3142(e). Finally, in determining whether "no condition or combination of conditions will reasonably assure" a defendant's appearance and the community's safety, the judicial officer must consider:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;[2]

---

[2] The legislative history of the Bail Reform Act reveals why a narcotics charge is cited as a factor weighing in favor of pretrial detention. *See, e.g.*, *United States v. Campbell*, 621 F. Supp. 987, 991 (D. Md. 1985) (quoting Senate Report findings that "[i]t is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, because of the nature of the criminal activity

4

(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including—
    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings . . .
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

In *United States v. Salerno*,[3] the Supreme Court upheld the Bail Reform Act against facial challenges on Eighth Amendment and Due Process grounds. After examining the legislative history of the Act, the Court found that pretrial detention is regulatory, not penal, in nature, and therefore does not constitute "impermissible punishment before trial" in facial violation of substantive due process. *Id.* at 746-47. The Court reserved judgment, however, "as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal." *Id.* at 747 n.4.

B. Does the Bail Reform Act "As Applied" Offend Due Process?

The issue of when a lengthy pretrial detention rises to the level of an "as applied" due process violation is raised by Defendant's motion, and has been addressed by numerous courts of appeals. *See, e.g.*, *United States v. Accetturo*, 783 F.2d 382 (3d Cir. 1986); *United States v. Ojeda Rios*, 846 F.2d 167 (2d Cir.1988) (per curiam); *United States v. Hare*, 873 F.2d 796 (5th Cir. 1989); *United States v. Infelise*, 934 F.2d 103 (7th Cir. 1991).

In *Hare*, the Fifth Circuit stated the prevailing view that a due-process limit on the

_____

with which they are charged, they pose a significant risk of pretrial recidivism.").

[3] 481 U.S. 739 (1987).

5

duration of preventive detention exists and "requires assessment on a case-by-case basis." *Id.* at

801. While recognizing that the length of detention was a factor the *Salerno* court cited as

relevant to the due process analysis, the court found:

> [T]he clause establishes no specific limit on the length of pretrial confinement. In determining whether due process has been violated, a court must consider not only factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the government's proof that the defendant poses a risk of flight or a danger to the community, and the strength of the government's case on the merits, but also additional factors such as the length of the detention that has in fact occurred or may occur in the future, the non-speculative nature of future detention, the complexity of the case, and whether the strategy of one side or the other occasions the delay.

*Id.*[4] In the Second Circuit's view, the underlying question in this analysis is "whether the

government has a nonpunitive reason for detention and whether detention 'appears excessive in

relation to' the nonpunitive purpose." *United States v. Millan*, 4 F.3d 1038, 1043 (2d Cir. 1993)

(quoting *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 169 (1963)).

    The Court finds that the balance of the *Hare* factors weigh in favor of Defendant's

continued detention. Defendant is charged with managing a criminal drug organization and with

numerous, serious acts of violence associated with that role. His charges trigger §3142(e)

presumptions that no condition or combination of conditions will reasonably assure his

appearance or the community's safety. The nature, number, and seriousness of the violent and

narcotics offenses charged weigh in favor of pretrial detention, as does the weight of the evidence

against him. At the first trial, the Court saw firsthand a parade of witnesses testify that

Defendant was the longstanding leader of a criminal drug enterprise and either ordered or

personally participated in violent acts aimed at consolidating his enterprise's dominance in the

---

[4] The *Hare* court ultimately remanded to the district court for a hearing and consideration of these factors.

drug trade and his leadership role. Although many of these were cooperating witnesses, almost all of their testimony was corroborated by one or multiple sources. The Government also introduced abundant physical evidence which, coupled with the testimony, connected Defendant to numerous specific acts of violence.

Although some factors mitigate the risk of flight, the Court finds that on balance the Government has shown this risk to be grave. If released, Defendant could rely on a strong family network in the Charlottesville area for support. He is a lifelong resident of Charlottesville, and has proposed 24-hour home confinement (presumably with an electronic surveillance bracelet) at his aunt's house as a condition of his release. The Court also finds, however, that Defendant also has numerous ties outside Charlottesville. As evidence offered at the July 28, 2004 bond hearing revealed, Bryant was arrested in North Carolina. (Tr. 45). He also has connections to the Virginia Beach area. *Id.* Further, as the first trial unfolded, Defendant became aware of the weight of the Government's case against him and thus the very real possibility of a life sentence, giving him an additional incentive to flee. *See Millan*, 4 F.3d at 1046. The evidence showed that Defendant earned significant income from his illicit activities and may still have the resources to finance a successful flight. *Cf. Id.*

Further, the Court finds that if released, Defendant would pose a significant danger to the community. Testimony at trial showed that Defendant's past legitimate work as a rap artist earned him minimal income; that he is accustomed to a lavish lifestyle; and that he has a long history of financing this lifestyle by engaging in drug activity not as a street seller, but as a manager operating from his uncle's house, where he once lived. Given this history, the Court questions whether monitored confinement would prevent Defendant from renewing his criminal

7

drug and violent activity. *See id.* at 1048-49 ("The sort of electronic surveillance suggested by the defendants and approved by the district court can be circumvented .... If the government does not provide staff to monitor compliance extensively, 'protection of the community would be left largely to the word of [Defendants] that [they] will obey the conditions.'") (citations omitted). Further, the trial has involved the testimony of numerous Charlottesville residents, both incarcerated and not incarcerated. Even if Defendant remained confined to his aunt's home, this would not prevent him from organizing reprisals or attempting to intimidate cooperating witnesses or their families. The trial testimony revealed that Defendant does not hesitate to order reprisals against those who cross his path. In sum, despite the alternative of home confinement, the §3142(e) presumption and §3142(g) considerations still support a finding by clear and convincing evidence that Defendant poses a danger to the community.

However, because Defendant raises an as applied due process challenge to his continued detention under the 18 U.S.C. §3142, the Court's inquiry cannot stop here. Additional factors to be weighed include "the length of the detention that has in fact occurred or may occur in the future, the non-speculative nature of future detention, the complexity of the case, and whether the strategy of one side or the other occasions the delay." *Hare*, 873 F.2d at 801. The ultimate question is whether the Government has shown a nonpunitive, regulatory reason for detention and whether detention is excessive in relation to the regulatory purpose. *Millan*, 4 F.3d at 1043.

Defendant has been detained pretrial for nearly nineteen months and unless he obtains relief from the Court, he will have been detained almost twenty-two months by the time his retrial is scheduled to finish. The *Salerno* court cited limitation of the maximum length of pretrial detention "by the stringent time limitations of the Speedy Trial" in support of its finding

8

that facially, pretrial detention is regulatory, not punitive, in nature. *Salerno*, 481 U.S. at 747. The duration of Defendant's pretrial detention is significantly longer than the time contemplated by the Speedy Trial Act, thus weakening a premise of the *Salerno* court's holding.

The bulk of the delay in the case can be attributed to (1) the fact that the original indictment was superceded; (2) the Court's application of the "complex trial" exception to the Speedy Trial Act;[5] (3) juror misconduct resulting in a mistrial; and (4) the Defendant's own request, at the behest of counsel, for a post-April 20, 2006 trial date.

The Court finds that none of these causes alone or in combination change the regulatory nature of Defendant's pretrial detention. *Cf. Hare*, 873 F.2d at 801. Defendant is directly responsible for part of the delay; the mistrial was wholly beyond the control of the parties or the Court and was requested by Defendant over the Government's opposition; and the Court's finding that the complexity of the case warranted a six month continuance was well-justified, given the number of the charges, the time span of the alleged conspiracy, the number of co-defendants and unindicted co-conspirators, the number of alleged overt acts and racketeering conduct, the thousands of pages of evidence and hours of audio and video recordings, dozens of witnesses, and considerable physical evidence. Further, the Court can make no finding that the Government's "responsibility" for the time between indictments evinces a punitive intent, because there is no evidence of record that the Government could or should have delayed filing the initial indictment or obtained the superceding indictment sooner. Finally, despite the admittedly long duration of Defendant's pretrial detention, it is not "excessive" in relation to the regulatory purpose, which is to protect the safety of individuals and the community at large. The

---

[5] 18 U.S.C. § 3161(h)(8)(B)(ii).

9

Court makes this finding because of the evidence showing the sheer scale and seriousness of Defendant's drug activity and acts of violence. In summary—and noting the nonspeculative nature of future detention—the Court finds that Defendant's substantive due process rights would not be violated by his continued detention through trial.[6]

This finding is supported by precedent. Length of detention "will rarely by itself offend due process." *United States v. Orena*, 986 F.2d 628, 631 (2d Cir.1993). In *United States v. Millan*,[7] the Second Circuit rejected a due process challenge involving a pretrial detention expected to last 30 months, in a case also involving a mistrial, even though the Government bore some responsibility for the mistrial. In that case, the two defendants challenging continued detention were arrested and charged with participating in a conspiracy to distribute heroin. *Id.* at 1040. One was allegedly the leader of the heroin-distribution organization, and the other his "second-in-command," responsible for day-to-day supervision of the organization's activities. *Id.* at 1040-41. As with Defendant in this case, among other charges, both were charged with violating the Continuing Criminal Enterprise statute, 21 U.S.C. § 848. *Id.* at 1041. Though in some respects *Millan* is distinguishable from this case, the key considerations—in the wake of a mistrial, the flight risk and danger to the community posed by defendants charged with numerous serious crimes including managing a continuing criminal drug enterprise —are identical.

---

[6] Nor are Defendant's procedural due process rights infringed by the Court's declining to hold a hearing, given the numerous bond hearings Defendant has had over the course of his detention, the sufficiency of the briefs in presenting the relevant issues, and the abundance of record evidence supporting the Court's decision.

[7] 4 F.3d 1038 (2d Cir. 1993).

10

## III. CONCLUSION

Under the specific facts of this case, the Court finds that Defendant's pretrial detention, although lengthy, does not offend the Due Process clause of the Fifth Amendment. Defendant's renewed motion to set bond will be denied in an order to follow.

The Clerk of the Court is directed to send certified copies of this Memorandum Opinion to all counsel of record.

ENTERED: _Norman K. Moon_
U.S. District Judge

_February 27, 2006_
Date

11