CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
JUN 15 2006
for C'ville
JOHN F. CORCORAN, CLERK
BY: /s/ _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> LOUIS ANTONIO BRYANT, <br><br> *Defendant.* | CRIMINAL CASE No. 3:04-CR-00047-01 <br><br><br> MEMORANDUM OPINION <br><br><br><br> JUDGE NORMAN K. MOON |

This matter comes before the Court on Defendant's motion for a judgment of acquittal and a new trial, filed June 1, 2006, pursuant to Rules 29(c) and 33(a) of the Federal Rules of Criminal Procedure. For the reasons stated below, Defendant's motion will be denied.

## I. BACKGROUND

On May 22, 2006, after a multi-week trial, a jury rendered a verdict convicting Defendant of conspiring to distribute or possess with intent to distribute marijuana, cocaine hydrochloride, and cocaine base in violation of 21 U.S.C. §846[1] (Count One); engaging in a continuing criminal enterprise in violation of 21 U.S.C. §§ 848(a) & (b) (Count Two); conspiring to conduct and participate in the affairs of a racketeering enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d) (Count Three); possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) (Count Eleven); using or carrying a firearm during or in

---

[1] The jury also made various special findings in connection with the quantities of drugs involved in the conspiracy and other aggravating conduct. (Verdict Form, p. 1-2).

1

relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1) (Count Twelve); attempted murder in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(4) (Count Fifteen); and two counts of threatening to commit a crime of violence in aid of racketeering activity in violation of 18 U.S.C. § 1959(a)(4).

The convictions stem from Defendant's leading position in a criminal drug enterprise centered in and around 10th Street and Page Street in the city of Charlottesville, Virginia. Among other facts, the jury found by special verdict that Defendant was a principal supervisor and leader in the enterprise, that the enterprise involved the distribution of 1.5 kilograms or more of substances containing cocaine base, and that a number of violent acts and narcotics offenses were carried out in aid of the enterprise's racketeering activities.

## II. STANDARD OF REVIEW

Rule 29 of the Federal Rules of Criminal Procedure provides that the court may order acquittal where the evidence is insufficient to support a guilty verdict. If the evidence presented, taken in the light most favorable to the prosecution together with all reasonable inferences, permits any rational trier of facts to find a defendant guilty beyond a reasonable doubt, then the evidence is legally sufficient. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *United States. v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982); *United States v. Olbres*, 61 F.3d 967, 970 (1st Cir. 1995). The court must consider both direct and circumstantial evidence and allow the jury to determine the weight of the evidence and the credibility of witnesses. *Tresvant*, 677 F.2d at 1021.

Federal Rule 33 provides that the court may order a new trial if the interest of justice so requires. The court's authority is broader under Rule 33 than under Rule 29, and it may weigh evidence and evaluate the credibility of witnesses in determining whether to grant a new trial.

2

*United States v. Indelicato*, 611 F.2d 376, 387 (1st Cir. 1979). Whether to grant a new trial lies within the sound discretion of the district judge. *United States v. Wechsler*, 406 F.2d 1032, 1033 (4th Cir. 1966). The remedy of a new trial is to be used sparingly, however, and only where the evidence weighs so heavily against the verdict that it would be unjust to enter judgment, *United States v. Arrington*, 757 F.2d 1484, 1485-86 (4th Cir. 1985); *United States v. Lewis*, 220 F. Supp. 2d 548, 559 (S.D. W. Va. 2002), or where a trial error of sufficient magnitude to require reversal on appeal occurred. *United States v. Ringwalt*, 213 F. Supp. 2d 499, 508 (E.D. Pa. 2002) (citing 3 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 556 (3d ed. 2004)).

## III. DISCUSSION

### *1. Did the Court's admission of records custodian certifications constitute error under* Crawford v. Washington, *and if so, would this error require reversal?*

Citing *Crawford v. Washington*,[2] Defendant argues that the Court violated his Sixth Amendment confrontation rights by admitting a certification of nonexistence of public record under Fed. R. Evid. 803(10) & 902 and a records custodian certification and accompanying business records under Fed. R. Evid. 803(6) & 902(11). Specifically, Defendant assigns error to the Court's admission of an affidavit certifying the non-existence of any tax records filed by the Defendant from 1998-2003 with the Internal Revenue Service, and an affidavit authenticating a gun retailer's business records.

A. <u>Certification of Non-existence of Public Record</u>

The Fifth and the Ninth Circuits have considered challenges to certifications of non-

---

[2] 541 U.S. 36 (2004). In *Crawford*, the Supreme Court held that the Confrontation Clause is violated by the admission of testimonial hearsay without a showing that the out-of-court declarant is unavailable and that the defendant had a prior opportunity to cross-examine the declarant. *Id.* at 54.

3

existence of public record (CNRs) under *Crawford*. *United States v. Cervantes-Flores*, 421 F.3d 825 (9th Cir. 2005); *United States v. Rueda-Rivera*, 396 F.3d 678 (5th Cir. 2005). In both cases, the appellants were convicted of being found in the United States following deportation and removal, without having obtained the consent of the Attorney General or the Secretary of the Department of Homeland Security, in violation of 8 U.S.C. § 1326. *Id.* at 827-28; *id.* at 678. The trial courts admitted CNRs prepared by the Immigration and Naturalization Service certifying that no evidence existed in the INS files that the Attorney General had granted permission to reenter the United States following deportation, which established an essential element of the offense. *Id.* at 830-31; *id.* at 679. No showing had been made that the INS officials who prepared the CNRs were unavailable or that the defendants had an opportunity to cross-examine them. Concluding that the CNRs were nontestimonial for purposes of *Crawford*, both courts held that they were properly admitted. *Id.* at 834; *id* at 680.

The Ninth Circuit most clearly addressed the argument that a CNR is unlike a business record[3] because it is not prepared in the ordinary course of business, but rather at the request of a federal prosecutor in anticipation of litigation. *Cervantes-Flores*, 421 F.3d at 832-833. The court noted that the distinction between testimonial and non-testimonial statements has not been explicated in detail, but did concede that statements "prepared for litigation" were cited in *Crawford* as a core concern of the Sixth Amendment.[4] *Id.* at 831-32. However, although the

---

[3] Business records were explicitly characterized as nontestimonial in *Crawford*. *Crawford*, 541 U.S. at 56.

[4] *See Crawford*, 541 U.S. at 51 ("Various formulations of this core class of 'testimonial' statements exist: 'ex parte in-court testimony or its functional equivalent—that is, material such as affidavits . . . that the defendant was unable to cross-examine . . . that declarants would reasonably expect to be used prosecutorially.'").

4

CNR was prepared for litigation, its sole function was to show the result of a query of a class of records kept in the ordinary course of the INS's activities prior to and regardless of prosecution. *See id.* at 833. Thus, the CNR was "much like" a business record, and, moreover, did not resemble the examples of testimonial evidence cited in *Crawford*, which included statements elicited during "'[p]olice interrogations' and 'prior testimony at a preliminary hearing, before a grand jury, or at a former trial.'" *Id.* at 833-34 (citing *Crawford*, 541 U.S. at 56).

Similarly, at least under the facts of this case, the Court finds that the CNR of an IRS custodian, although created for litigation, is analogous to a nontestimonial business record. Its preparation involves the objective, factual exercise of verifying the existence or nonexistence of nontestimonial matter. *Cf. United States v. Bahena-Cardenes*, 411 F.3d 1067, 1074-75 (9th Cir. 2005) (holding that a warrant including a statement that an officer witnessed defendant's departure from the country was nontestimonial under *Crawford*, as it involved a "routine, objective cataloguing of an unambiguous factual matter"). The CNR was created by a person without any real interest in or proximity to the case. Admittedly, the IRS custodian's certification is a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51. However, in no real sense is the custodian an "accuser"—particularly here where the Defendant's nonfiling of tax returns was introduced only as circumstantial evidence that his apparent abundance of resources, as proved by other evidence, must have been derived from illicit drug activity.

Even if the admission of the IRS custodian's CNR was error under *Crawford*, it is not of sufficient magnitude to warrant reversal on appeal. A defendant "is entitled to a fair trial but not a perfect one." *United States v. Blevins*, 960 F.2d 1252, 1262 (quoting *Lutwak v. United States*,

5

344 U.S. 604, 619 (1953)). A violation of a defendant's right to confront a witness against him is constitutional. However, when a constitutional error occurs "during the presentation of the case to the jury, and . . . may therefore be quantitatively assessed in the context of other evidence presented," it is characterized as a trial error and subject to harmless error analysis. *Blevins*, 960 F.2d at 1262 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 307-08 (1991)). The test for determining harmlessness is whether it is "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Neder v. United States*, 527 U.S. 1, 18 (1999).

As mentioned, the CNR in this case was offered by the Government to illustrate that the Defendant had no legitimate source of income. Thus, it provided indirect evidence that he obtained his substantial income or resources from a continuing series of narcotics law violations,[5] and not from a legitimate source such as a salary or a business. However, even excluding the IRS custodian's CNR from the evidentiary picture, it is clear that a rational jury would have found beyond a reasonable doubt that Defendant derived substantial income or resources from a continuing series of drug violations.

On May 9, Brooks Woodfolk testified that he gave Defendant $1000-1200 for every ounce of crack that he sold, and that for a period from October 1997 until his re-incarceration in November 1998, he bought exclusively from Defendant. (Tr., 6/9/06, at 115, 118). Brooks Woodfolk explained that the most he would buy from Defendant at one time was six to seven ounces, and Defendant would "front" him an equal amount with the expectation that he would be

---

[5] The Government was required to prove this essential element in order to obtain a conviction under 21 U.S.C. §848(a).

6

paid once the crack was sold. (*Id.* at 116-19). That same day, Roger Henry testified that Defendant was his sole supplier of crack cocaine, that he sold about three ounces per week from April 2000 to November 2000, and that he gave Defendant $800 for every ounce of crack that he sold. (*Id.* at 229-31). On May 12, Richard Johns testified at length about Defendant's purchase of wholesale quantities of powder cocaine. Johns stated that Defendant came to Philadelphia four to five times and bought half a kilogram of powder cocaine three times for about $11,000 and a full kilo once or twice for $20,000-23,000. Johns also testified that he and Defendant pooled resources to get a better price from a Texas dealer, and that Defendant contributed $20,000 to the one Texas deal and also contributed to a second, larger Texas deal.

Further, on May 12, 2006, Officer Parrott of the Durham, North Carolina Police Department testified that he found exactly $20,000 in cash bundled in a locked compartment of the rear of a Cadillac Escalade in which he also found a fake license bearing Defendant's name and photo. At least one witness identified the Escalade as Defendant's vehicle. *See* (Tr. 5/16, L. Timberlake). After Office Parrott authenticated them, photos of the Escalade, the bundled $20,000, and the fake license were offered into evidence. *See* SWD-29; SWD-39; SWD-108. Also on May 12, Officer Davis of the Philadelphia Police Department testified that he recovered $4368 in U.S. currency from Defendant's pockets after searching him pursuant to a traffic stop.

Given the abundance of evidence proving the same element which the CNR was offered to help establish, even if admitting the CNR was error, it was not a "trial error of sufficient magnitude to require reversal on appeal" and thus is not grounds for a new trial.

B. Admission of 902(11) Certification of Regularly Conducted Business Activity

Citing *United States v. Wittig*,[6] Defendant also argues that the admission of a business record custodian's certification under Rules 803(6) & 902(11) was improper under *Crawford*.

The analysis and cases cited in subsection A above do not control this precise question.[7] However, no further analysis under *Crawford* is needed. Unlike the CNR described above, the business record certification in question does not serve independently as relevant evidence in this case; rather, it serves merely to lay a foundation for the admission of business records. If its admission was error under *Crawford*, that error was clearly harmless, as its absence from the case alters the evidentiary picture imperceptibly, if at all.

To the extent Defendant also argues that any business records received with the custodian's certification were also improperly admitted, neither *Crawford* nor the rules of evidence support his position. As already noted, the Supreme Court explicitly characterized business records as nontestimonial; thus, the availability of the original declarant of an assertion made in a business record remains immaterial. *Crawford*, 541 U.S. at 56. Further, nothing in Rule 803(6) requires that a Rule 902(11) certification be admitted *into evidence* as a condition precedent to the admissibility of business records under Rule 803(6). Rule 803(6) provides in relevant part for the admissibility of:

A . . . record . . . in any form . . . of acts . . . made at or near the time by, or from information

---

[6] 2005 U.S. Dist. LEXIS 10067, 2005 W.L. 1227790 (D. Kan. May 23, 2005).

[7] The Ninth Circuit has held that certifications of authenticity under Rule 902(4) of public records admitted under Rule 803(8) are not testimonial. *United States v. Weiland*, 429 F.3d 1062, 1076-77 (9th Cir. 2005). However, the court specifically stated that this holding did not reach the question of the testimonial nature of business records under Rule 803(6), which "require additional foundation." *Id.* at 1076 n. 13.

8

transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, **all as shown by** . . . certification that complies with Rule 902(11) . . . .

(Emphasis added). The rule does not state that a custodian's certification needs to be "shown" to the trier of fact as a precondition to admissibility of evidence under the business records exception. Rather, the broad language of Rule 803(6) allows the court to decide under Rule 104(a)[8] whether a certification conforms to Rule 902(11).[9] *See* Fed. R. Evid. 803 practice note ("The predicate or foundation that normally must be laid for admissibility of a record under Rule 803(6) includes a number of points. The judge must be convinced, pursuant to Rule 104(a), that the requirements of Rule 803(6) are met.").

## *2. Did the Court's instruction to the jury that the terms cocaine base, crack, and crack cocaine all refer to the same substance constitute error?*

Defendant also argues that the Court erred in instructing the jury that the terms cocaine base, crack cocaine, and crack all refer to the same substance,[10] because "crack" is not referred to in the United States Code as a controlled substance, and therefore its possession can not support his conviction.

---

[8] Rule 104(a) provides that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court . . . . In making its determination it is not bound by the rules of evidence except those with respect to privileges."

[9] It is on this point that the Court parts company with the district court of Kansas in *United States v. Wittig.*

[10] *See* Jury Instr. #12(d).

9

In United States v. Pinto,[11] the Fourth Circuit considered defendants' argument that the district court's instruction defining the term cocaine base to include crack denied them due process because the term "cocaine base" as used in 18 U.S.C. § 841 does not include the substance crack. The Fourth Circuit had "little difficulty rejecting appellants' argument," noting that a forensic chemist had testified without objection that "cocaine base" is a substance with a particular chemical formula and that the substance seized from appellants' apartment bore the identical chemical formula. *Id.* at 49. The court noted that "[o]ther circuits faced with similar challenges have uniformly recognized that 'cocaine base' includes the substance crack,"and held that "for the purposes of section 841, the term 'cocaine base' includes cocaine freebase, commonly referred to as crack." *Id.* at 49-50. *See also United States v. Perkins*, 108 F.3d 512, 518 (4th Cir. 1997).

Similar to the circumstances in *Pinto*, on May 12, 2006, Anthony A Burke, a forensic drug chemist employed by the Virginia state laboratory, testified as follows:

> Q. When you say whether it's a base form or not of cocaine, base refers to crack cocaine, is that correct?
> A. That's correct.
> Q. And otherwise, it's just powder cocaine?
> A. Yes, sir.
>   . . .
> Q. Again, cocaine base is crack cocaine?
> A. That's correct.

(Tr. March 12, at 131, l. 9-13; 18-19). Expert testimony that the term cocaine base includes crack cocaine is most likely unnecessary in light of the broad holding of *Pinto*; crack, crack cocaine, and cocaine base are used interchangeably in the decisional law. However, given the clear testimony of an unquestioned expert that "cocaine base" and "crack cocaine" are essentially synonymous,

---

[11] 905 F.2d 47, 49 (4th Cir. 1990).

10

Case 3:04-cr-00047-NKM Document 1053 Filed 06/15/06 Page 10 of 11 Pageid#: 2670

Defendant's argument has no merit under clear Fourth Circuit precedent.

### 3. The "catchall" argument

Defendant also states that he "reincorporates by reference all arguments made in his motion for judgment of acquittal after the government rested, and his renewed motion for judgment of acquittal after the defense rested." The Court considered all of Defendant's arguments and denied these motions at the time they were made. Defendant has not expanded further on any of these. Thus, the Court maintains its previous finding that a rational juror could have found beyond a reasonable doubt that the Defendant is guilty of all charges for which he was convicted based on the evidence presented by the Government, and thus will deny Defendant's Rule 29(c) motion.

Additionally, the Court finds that the interests of justice would not be served by granting a new trial. Rather than "weighing heavily against" the jury's verdict, the evidence supports it. Further, none of Defendant's arguments support a finding that a trial error requiring reversal occurred. Thus, the Court will deny Defendant's Rule 33(a) motion in an Order to follow.

The Clerk of the Court is directed to send certified copies of this Memorandum Opinion to all counsel of record.

ENTERED: *[signature]*
U.S. District Judge

Date: June 15, 2006