UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>LOUIS ANTONIO BRYANT,<br><br>*Defendant.* | CASE NO. 3:04-cr-00047-01<br><br><u>MEMORANDUM OPINION</u><br><br>JUDGE NORMAN K. MOON |

    This opinion and the accompanying order resolve the numerous petitions that Defendant Louis Antonio Bryant has brought for relief from his prison sentence. In 2006, after a jury found Mr. Bryant guilty of (1) engaging in a continuing criminal enterprises as "a principal administrator, organizer, supervisor, and leader" of an offense that involved "1.5 kilograms or more" of cocaine base and (2) possession of a firearm during and in relation to a drug trafficking offense, this Court sentenced Mr. Bryant to a mandatory sentence of life imprisonment plus 120 months. (Dkt. 1164). In October 2020, the Court granted Mr. Bryant's motion to reduce his sentence pursuant to the First Step Act of 2018, leaving him with a sentence of 300 total months of imprisonment and five years of supervised release. (Dkt. 1842, 1905).

    Then, in November 2020, Mr. Bryant filed his first motion seeking compassionate release because of the COVID-19 pandemic. (Dkt. 1911). The Court denied that motion. (Dkt. 1928). Mr. Bryant moved for reconsideration, and the Court also denied that motion. (Dkt. 1930, 1931). Then, Mr. Bryant continued filing compassionate release motions and other motions seeking relief from his sentence. (Dkt. 1934, 1935, 1941, 1947, 1949).

    Finding no reason to provide further relief past what it has already provided, the Court will deny Mr. Bryant's motions with one exception. Mr. Bryant has also moved the Court to

make a nonbinding recommendation that he be placed in a halfway house for the final 12 months of his sentence. (Dkt. 1934). The Court will make that recommendation.

## I. Background

From about 1995 to 2005, Mr. Bryant was involved in a drug trafficking organization based in Charlottesville, Virginia, variously known as "Project Crud," "PJC," or "Westside." (Dkt. 1843 (PSR) at ¶ 33). A joint investigation by the Jefferson Area Drug Enforcement Task Force and the Bureau of Alcohol, Tobacco, Firearms, and Explosives revealed that the organization was involved in distributing large amounts of crack cocaine, powder cocaine, heroin, phencyclidine, and marijuana. (*Id.*). The investigation also revealed that the organization was involved in murder, attempted murder, kidnapping, robbery, and intimidation, all in furtherance of its enterprise. (*Id.*). Law enforcement agents identified Mr. Bryant as the leader of the organization. (*Id.*).

Mr. Bryant's involvement in the organization began around 1995, when he shot a man named James Bell to enhance his own standing within the organization. (*Id.* at ¶ 34). In 2004, a rival drug dealer named Robert Pryor stole about 50 pounds of marijuana from Mr. Bryant. (*Id.*). Thereafter, Mr. Bryant and his associates sought revenge on Pryor, holding several of Pryor's associates at gunpoint. (*Id.*). As a result of the marijuana theft, five separate shooting incidents occurred in Charlottesville in the following months. (*Id.*). Mr. Bryant's organization shot into several vehicles and homes attempting to murder Pryor. (*Id.*). Mr. Bryant directly threatened to murder Pryor and his family twice in March 2004. (*Id.*)

Bryant was initially charged in July 2004 in an eight-count indictment. (Dkt. 3). A superseding indictment charged Bryant with twelve counts. (Dkt. 213). Count 1 charged a conspiracy to possess with intent to distribute and to distribute 50 grams or more of crack

cocaine, 5 kilograms or more of cocaine hydrochloride, heroin, PCP and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 846, 859, 860 and 861; Count 2 charged Bryant with engaging in a continuing criminal enterprise involving possession with intent to distribute and distribution of cocaine base, or crack cocaine, involving at least 1.5 kilograms in violation of 21 U.S.C. §§ 848(a)–(b); Count 3 charged a conspiracy to participate in a racketeer influenced corrupt organization, in violation of 18 U.S.C. §1962(d); Counts 5 and 6 charged attempted murders of Natalie Reyes and James Jones, in aid of racketeering activity, in violation of 18 U.S.C. §§ 2 and 1959(a)(5); Count 11 charged possession of marijuana with intent to distribute, in violation of 18 U.S.C. § 841(a)(1); Count 12 charged using, carrying, brandishing and discharging a firearm during and in relation to a drug trafficking crime as charged in Count 1, in violation of 18 U.S.C. § 924(c)(1); Counts 13, 14, 15, 16 and 17 charged attempted murders of Richard Koonce, Phillip Green and Robert J. Pryor, and threatening to murder Pryor and his family, in aid of racketeering activity, in violation of 18 U.S.C. §§ 2 and 1959(a)(5). (Dkt. 213).

     Bryant and three co-defendants proceeded to trial on November 14, 2005. Due to juror misconduct, the Court declared a mistrial on November 30, 2005. (Dkt. 829). Bryant's second trial began on May 8, 2006. (Dkt. 963). On May 22, 2006, the jury found Bryant guilty of Counts 1, 2, and 3. With respect to Count 2, the jury specifically found that, in addition to the required predicate acts under 21 U.S.C. § 848(a), that Bryant was "a principal administrator, organizer, supervisor, and leader" and that the offense involved "1.5 kilograms of more" of cocaine base. (Dkt. 1007). The jury also convicted Bryant on counts 11, 12, 15, 16, and 17. Bryant was acquitted on Counts 5 and 6, while Counts 13 and 14 were dismissed on the government's motion.

Based on the then-existing sentencing guidelines, the Court sentenced Bryant on August 21, 2006 to life imprisonment plus 120 months to be served consecutively, and 5 years supervised release. Bryant appealed and on November 25, 2008, the Fourth Circuit remanded with instructions to vacate Bryant's conviction on Count 1. *United States v. Bryant*, 417 Fed. Appx. 220 (4th Cir. 2008), (Dkt. 1340-41). The Fourth Circuit affirmed all other convictions and Bryant's sentence. (Dkt. 1342).

In April 2019, Bryant moved the Court to reduce his sentence pursuant to the First Step Act of 2018. (Dkt. 1842). The Court granted the motion in October 2020, finding that Bryant was eligible for a sentence reduction due to the modified penalties of the Fair Sentencing Act of 2010, and, upon considering the § 3553(a) factors, the Court reduced his sentence to 300 months imprisonment and five years of supervised release, a downward variance from his advisory guidelines range. (Dkt. 1905).

Shortly thereafter, Bryant filed his first of several compassionate release motions seeking release on account of the COVID-19 pandemic. (Dkt. 1911). The Court denied the motion, holding that although Bryant has obesity and hypertension, he did not demonstrate extraordinary and compelling grounds warranting release because he had received Pfizer's COVID-19 vaccine, and, moreover, that the § 3553(a) factors weighed against any further sentence reduction, much less release. (Dkt. 1928). The Court also denied Mr. Bryant's motion for reconsideration on his first compassionate release motion. (Dkt. 1931).

Then, Mr. Bryant kept filing compassionate release motions. He filed compassionate release motions in August 2021 (Dkt. 1935), January 2022 (Dkt. 1947), and February 2022 (Dkt. 1949). He has also submitted several pleadings in support of those motions. (Dkt. 1942, 1943, 1944, 1946, 1948, 1952).

Mr. Bryant also filed a motion requesting that the Court make a non-binding recommendation that BOP place him in a Residential Reentry Center, i.e., a halfway house, for the last twelve months of his sentence. (Dkt. 1934).

Mr. Bryant is set to be released from prison on September 22, 2025. (*BOP Inmate Search*, https://www.bop.gov/mobile/find_inmate/byname.jsp, last accessed April 11, 2022).

## II. Compassionate Release Motions

Since the Court ruled on Mr. Bryant's first compassionate release motion, he has filed three more. (Dkt. 1935, 1947, 1949). In the first, in August 2021, Mr. Bryant moved for compassionate release based on the circumstances posed by the then-prevalent Delta variant. (Dkt. 1935). In the second, in January 2022, he moved for release because of the Omicron variant. (Dkt. 1947). In the third, in February 2022, he moved for release because of a surge in cases at the prison where he is incarcerated, FCI McDowell. (Dkt. 1949).

Because Mr. Bryant has not raised any new health conditions since his first compassionate release motion, the Court will consider whether the health conditions he raised there (obesity and hypertension), along with the threats posed by the current circumstances of the pandemic, constitute extraordinary and compelling reasons for release. *See* 18 U.S.C. § 3582(c)(1). If the Court finds such extraordinary and compelling reasons, the Court will also consider whether the § 3553(a) factors warrant release. *See id.*

### A. Exhaustion of Administrative Remedies

Because the government has not addressed whether Mr. Bryant has exhausted his administrative remedies, the Court will consider the issue waived. *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021) (holding that the exhaustion rule "may be waived or forfeited" by the government); *United States v. Sumblin*, No. 7:04-cr-66, 2021 WL 1432305,

at *3 (W.D. Va. Apr. 15, 2021) (Dillon, J.) (noting that the exhaustion requirement is a claims-processing rule, not a jurisdictional bar, and therefore can be waived).

### B. Extraordinary and Compelling Circumstances

A court

> may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

The Fourth Circuit has held that "district courts are 'empowered to consider any extraordinary and compelling reason for release that a defendant might raise.'" *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020). Under some circumstances, "[a]n inmate's particularized susceptibility to COVID-19 and increased risk of contracting the virus may constitute an extraordinary and compelling reason justifying release." *United States v. Martin*, No. 1:05-cr-21, 2021 WL 1168696, at *2 (N.D. W. Va. Mar. 26, 2021) (citation omitted).

Mr. Bryant argues that his obesity and hypertension, along with the circumstances posed by the COVID-19 pandemic, constitute extraordinary and compelling reasons for release. (Dkt. 1935, 1947, 1949). He notes that although he has received the Pfizer vaccine, the vaccine is not 100% effective. (Dkt. 1935 at 2–3). He also notes that the pandemic has made life more difficult within his prison due to the continuous lockdowns and the restrictions on activities within the BOP system. (Dkt. 1935 at 6–12).

As the Court noted in its opinion on his first compassionate release motion, although the vaccines are not 100% effective at preventing illness and death, they are still highly effective. (Dkt. 1928 at 3). The evidence that has emerged since that time continues to support the high effectiveness of the vaccines, including against emerging variants. *See* "COVID-19 Vaccines

6

Work," Center for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last accessed April 11, 2022).  This District has repeatedly held that a fully vaccinated individual will not usually be able to demonstrate extraordinary and compelling reasons for release, even if they have a medical condition that heightens their susceptibility to severe illness or death. *See, e.g., United States v. Reynolds*, 2021 WL 2010457, at *1 n.2 (W.D. Va. May 20, 2021) (Jones, J.); *United States v. Lottier*, 2021 WL 2188243, at *4 (W.D. Va. May 28, 2021) (Dillon, J.).

The Court notes Mr. Bryant's argument that the pandemic has made his incarceration harsher than it would be otherwise. Indeed, BOP has responded to the pandemic by instituting lockdown procedures and reducing programming. "COVID-19 Modified Operations Plan & Matrix," Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last accessed April 11, 2022). And some courts have considered the unexpected harshness of prisoners' sentences due to COVID-related lockdowns in finding extraordinary and compelling reasons for release. *See, e.g., United States v. Reiter*, 2021 WL 1424332, at *8 (S.D.N.Y. April 15, 2021); *United States v. Rodriguez*, 2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020). *But see United States v. McCrae*, 2021 WL 142277, at *3–4 (considering unduly harsh prison conditions in § 3553(a) analysis rather than in extraordinary and compelling circumstances analysis). But the Court holds that Mr. Bryant's case is not one where the current conditions at his prison facility would warrant a finding of extraordinary and compelling reasons for release. FCI McDowell, where Mr. Bryant is incarcerated, is, as of April 11, 2022, operating under BOP's Level 2 COVID-19 plan, which indicates that social distancing and masking are required, and some areas of and activities within the facility have limited capacity. *See* "COVID-19 Modified Operations Plan & Matrix," Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last accessed April

11, 2022). So, while the conditions at FCI McDowell might be somewhat more onerous for prisoners than they would be in the absence of the pandemic, they are not unusually arduous to the extent that the Court could hold that they constitute extraordinary and compelling reasons for release. Indeed,

> changes in a prisoner['s] location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges—matters which every prisoner can anticipate are contemplated by his original sentence to prison— are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently.

*Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991).

In short, the Court holds that Mr. Bryant has not demonstrated extraordinary and compelling reasons for release.

### C.  Section 3553(a) Factors

Even if the Court had found that extraordinary and compelling reasons supported a sentence reduction, it would still be required to "consider[] the factors set forth in [18 U.S.C.] § 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Kibble*, 992 F.3d 326, 331–32 (4th Cir. 2021).

In Mr. Bryant's case, the Court already considered those factors in reducing his sentence to a below-guidelines sentence in its order on his motion under the First Step Act of 2018's provisions on continuing criminal enterprises. (Dkt. 195). There, the Court noted that Mr. Bryant has accepted responsibility for his crimes, shown good behavior while in prison, earned his GED, received positive feedback from his work supervisor, and obtained significant community support. (*See id.*; Dkt. 1910 at 36–39 (transcript of proceedings on First Step Act motion)). In his compassionate release motions filed since the Court granted him that sentence reduction, Mr. Bryant has continued to argue that he has accepted responsibility and shown good behavior, and

that further punishment would be unnecessary (*See* Dkt. 1935, 1947, 1949), but, because the Court already took those factors into consideration in its initial reduction of Mr. Bryant's sentence, the Court will not take them into account again here.

Mr. Bryant has not brought up any new factor that would warrant further reduction from his already below-guidelines sentence. The Court notes that Mr. Bryant has shown significant rehabilitation while incarcerated, but the Court has already accounted for that in its prior resentencing order. (Dkt. 1905). And again, Mr. Bryant has argued that the unduly harsh prison conditions created by BOP's response to the pandemic warrant a sentence reduction, but as mentioned, the conditions at FCI McDowell are not "unusually arduous conditions merit[ing] recognition by courts in measuring the just sentence." *McCrae*, 2021 WL 142277, at *4. Therefore, the Court holds that Mr. Bryant's current sentence remains sufficient, but no greater than necessary, to reflect the seriousness of the offense, to promote respect for the rule of law, to provide just punishment, to afford adequate deterrence, to protect the public, and to provide him with needed training, care, and treatment. *See* 18 U.S.C. § 3553(a).

### D. Conclusion on Compassionate Release Motions

Mr. Bryant has not demonstrated extraordinary and compelling reasons for release. And, even if he had, the Court would not grant a further sentence reduction after considering the factors in §3553(a). Therefore, the Court will deny his compassionate release motions.

### III. Motion for Recommendation for Placement in RRC

Mr. Bryant has also moved for the Court to issue a non-binding recommendation that he be placed in a Residential Reentry Center (RRC) (i.e., a halfway house) for the last year of his sentence. (Dkt. 1934). Pursuant to 18 U.S.C. § 3621(b)(4)(B), the district court that imposed a prisoner's sentence may issue a non-binding, strictly advisory recommendation that the prisoner

be placed in an RRC for the final 12 months of their sentence. *United States v. Ferguson*, 2018 WL 5095149 (D.S.C. Oct. 19, 2018); *United States v. Smith*, 2019 WL 4016211 (W.D. Va. Aug. 26, 2019). Although the Court may issue a non-binding recommendation, the ultimate decision whether to place a prisoner in an RRC is up to BOP. *Ferguson*, 2018 WL 5095149, at *3; 18 U.S.C. § 3621(b) ("Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment of that person."),

The Court, being closely familiar with Mr. Bryant's case from presiding over it for the past 17 years, will make the non-binding recommendation that he be placed in an RRC for the final 12 months of his sentence. As the Court noted while granting Mr. Bryant his sentence reduction under the Fair Sentencing Act of 2010 and the First Step Act of 2018, Mr. Bryant has taken advantage of programming within BOP, including obtaining his GED; he has maintained employment while in prison and received consistently good feedback from his supervisor; he has solicited many letters of recommendation from family and community supporters; and he has expressed sincere remorse for his actions. (Dkt. 1910 at 36–38).

The Court believes that placement in an RRC house for the maximum allowable 12-month period would facilitate Mr. Bryant's transition back into the community, and would especially help him find employment, secure housing, and reconnect with his family and community ties.

## IV. Other Motions for Relief

In the years since his trial and original sentencing, Mr. Bryant has filed various other motions for relief that are still outstanding on the docket. The Court will resolve them here.

- In 2016, Mr. Bryant filed a motion for reconsideration (Dkt. 1751), regarding the Court's prior order (Dkt. 1747) on his motions for relief from the judgment under Fed. R. Civ. P. 60(b)(6) (Dkt. 1696) and to amend his Rule 60(b)(6) motion (Dkt. 1698). The Court originally ruled that Mr. Bryant's motions here were untimely (Dkt. 1747), and he has not made an argument that would change the Court's decision. Therefore, the Court will deny his motion for reconsideration at Dkt. 1751.

- Mr. Bryant also moved for an evidentiary hearing on his motion for reconsideration regarding his Rule 60(b)(6) motion. (Dkt. 1770). Finding no reason to hold an evidentiary hearing on a long-past, already-decided issue, the Court will deny this motion.

- Mr. Bryant also filed several motions for the Court to rule on some of his outstanding motions. (Dkt. 1791, 1808, 1814). Because the Court is now ruling the outstanding motions, the Court will deny as moot the motions asking the Court for a ruling.

- Mr. Bryant has also filed a motion for the Court to fix an alleged clerical error in his judgment under Fed. R. Crim. P. 36. (Dkt. 1933). If the Court understands Mr. Bryant's motion correctly, he alleges that his judgment was never properly fixed after the Fourth Circuit ordered this Court to vacate his conviction under Count 1 (Dkt. 1342) or after the Court's order on his First Step Act motion pertaining the continuing criminal enterprise (Dkt. 1905). (*See* Dkt. 1933). The Court notes that the docket accurately reflects Mr. Bryant's sentence, and what he was convicted for. (*See* Dkt. 1905 and accompanying text on ECF entry). Mr. Bryant alleges that BOP might not have accurately updated its records pertaining to his judgment, but the Court notes that BOP's website accurately reflects that Mr. Bryant's release date will be in September 2025. (*BOP Inmate Search*, https://www.bop.gov/mobile/find_inmate/byname.jsp, last accessed April 11, 2022). But,

because the Court cannot figure out from the motion what the exact issue is, the Court will deny the motion without prejudice to allow Mr. Bryant an opportunity to explain further what, exactly, he believes the problem with his judgment is.

## V. Conclusion

The Court will issue an accompanying order summarizing the outcomes of the motions discussed in this memorandum opinion.

The Clerk is directed to send a copy of this opinion to all counsel of record.

Entered this  12th day of April 2022.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE