# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| UNITED STATES OF AMERICA <br><br> v. <br><br> LOUIS ANTONIO BRYANT, <br><br> *Defendant.* | CASE NO. 3:04-cr-00047 <br><br> OPINION & ORDER <br><br> JUDGE NORMAN K. MOON |

Defendant Louis Antonio Bryant, proceeding pro se, filed a motion for compassionate release, requesting that the Court reduce his sentence and let him serve his remaining time in home confinement or on supervised release. Dkt. 1965. Bryant is currently scheduled to be released on September 22, 2025. Bryant's motion will be **denied** because he has not presented "extraordinary and compelling" reasons, which are necessary to meet the requirements of the relevant compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i).

## Background

From around 1995 to 2005, Bryant was involved in a drug trafficking organization based in Charlottesville, Virginia. Dkt. 1843 ¶ 33. The organization was involved in distributing large amounts of cocaine, heroin, phencyclidine ("PCP"), and marijuana. *Id.* It was also involved in murder, attempted murder, kidnapping, robbery, and intimidation, all in furtherance of its enterprise. *Id.* Law enforcement agents identified Bryant as the leader of the organization. *Id.*

In 2004, Robert Pryor, a drug dealer, stole about 50 pounds of marijuana from Bryant. *Id.* ¶ 34. Thereafter, Bryant and his associates sought revenge on Pryor, holding several of Pryor's

1

associates at gunpoint. *Id.* As a result of the marijuana theft, five separate shooting incidents occurred in Charlottesville between April and May 2004. *Id.* Bryant and members of his organization shot into several vehicles and homes attempting to murder Pryor. *Id.* Bryant also threatened to murder Pryor and his family twice in March 2004. *Id.*

A superseding indictment charged Bryant with twelve counts. Dkt. 213. Count 1 charged conspiracy to possess with intent to distribute and to distribute 50 grams or more of crack cocaine, 5 kilograms or more of cocaine hydrochloride, heroin, PCP, and marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 846, 859, 860 and 861. Count 2 charged engaging in a continuing criminal enterprise involving possession with intent to distribute and distribution of cocaine base, or crack cocaine, involving at least 1.5 kilograms, in violation of 21 U.S.C. §§ 848(a)–(b) and 846. Count 3 charged conspiracy to participate in a racketeer influenced corrupt organization, in violation of 18 U.S.C. §1962(d). Counts 5 and 6 charged attempted murders of Natalie Reyes and James Jones, in aid of racketeering activity, in violation of 18 U.S.C. §§ 2 and 1959(a)(5). Count 11 charged possession of marijuana with intent to distribute, in violation of 18 U.S.C. § 841(a)(1). Count 12 charged using, carrying, brandishing, and discharging a firearm during and in relation to a drug trafficking crime as charged in Count 1, in violation of 18 U.S.C. §§ 2 and 924(c)(1). Counts 13, 14, and 15 charged attempted murders of Richard Koonce, Phillip Green, and Robert J. Pryor, in violation of 18 U.S.C. §§ 2 and 1959(a)(5).  Counts 16 and 17 charged threatening to murder Pryor and his family in aid of racketeering activity, in violation of U.S.C. §§ 2 1959(a)(4).

In November 2005, Bryant and three co-defendants proceeded to trial. The Court declared a mistrial due to juror misconduct. Dkt. 829. Following Bryant's second trial, the jury found him guilty of Counts 1, 2, and 3. Dkt. 1007. With respect to Count 2, the jury specifically

found that, in addition to the required predicate acts under 21 U.S.C. § 848(a), Bryant was "a principal administrator, organizer, supervisor, and leader" and that the offense involved "1.5 kilograms of more" of cocaine base. *Id.* The jury also convicted Bryant on Counts 11, 12, 15, 16, and 17. *Id.* He was acquitted on Counts 5 and 6, while Counts 13 and 14 were dismissed on the Government's motion. *Id.*

Based on the then-existing sentencing guidelines, the Court sentenced Bryant to life imprisonment plus 120 months to be served consecutively. Dkt. 1140. Bryant appealed and in November 2008, the Fourth Circuit remanded with instructions to vacate Bryant's Count 1 conviction but affirmed his other convictions and life sentence. *United States v. Bryant*, 417 F. App'x 220, 221 (4th Cir. 2008) (unpublished).

In April 2019, Bryant moved for the Court to reduce his sentence pursuant to the First Step Act of 2018. Dkt. 1842. The Court granted his motion, finding that Bryant was eligible for a sentence reduction due to the modified penalties of the Fair Sentencing Act of 2010, and, upon considering the § 3553(a) factors, the Court reduced his sentence to 300 months imprisonment, a downward variance from his advisory guidelines range. Dkt. 1905.

In 2020 and 2021, Bryant filed two compassionate release motions seeking release on account of the COVID-19 pandemic. Dkts. 1911, 1919. The Court denied his motions, noting although Bryant has obesity and hypertension, he did not demonstrate extraordinary and compelling grounds warranting release because he had received Pfizer's COVID-19 vaccine, and, moreover, that the § 3553(a) factors weighed against any further sentence reduction, much less release. Dkt. 1928. The Court also denied Bryant's motion for reconsideration of its denial of his compassionate release motions. Dkt. 1931.

Then, Bryant filed additional compassionate release motions in September 2021, January 2022, and February 2022. Dkts. 1935, 1947, 1949. In April 2022, the Court denied his motions on similar grounds as its prior denial of his compassionate release motions. Dkt. 1953. The Court, however, granted his motion requesting a non-binding recommendation that the Federal Bureau of Prisons ("BOP") place him in a Residential Reentry Center for the last twelve months of his sentence. *Id* at 10. Bryant then filed two motions asking the Court to reconsider its April 2022 denial of his compassionate release motions. Dkts. 1961, 1963. The Court denied the motions for reconsideration. Dkt. 1964. According to the BOP, he is set to be released from prison on September 22, 2025.

Bryant now has filed yet another compassionate release motion requesting that he be moved to home confinement or supervised release. Dkt. 1965. Bryant explains that the BOP may not be in a position to follow the Court's recommendation that he have maximum time in a halfway house at the end of his sentence. He argues that relief is warranted based on the length of time served, the rehabilitative steps he has taken, and his potential to play a positive role in the Charlottesville community. *Id.* at 1–2.

The Government opposes his motion. Dkt. 1972. It maintains that Bryant has not demonstrated "extraordinary and compelling" circumstances, and additionally that an early release is inappropriate in light of the applicable 18 U.S.C. § 3553(a) factors. *Id.* at 5–10.

The Court must **deny** this motion because the request does not meet the exacting standard of "extraordinary and compelling reasons" for release. 18 U.S.C. § 3582(c)(1)(A)(i).

### Statutory Framework

A court generally may not modify a term of imprisonment once the court has imposed sentence. 18 U.S.C. § 3582(c); *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021) (noting "the default position stated in 18 U.S.C. § 3582(c) is that a sentencing court 'may not modify a

4

term of imprisonment once it has been imposed'"). However, a statutory exception allows the court, on a defendant's motion, to reduce the term of imprisonment if the court finds that "extraordinary and compelling reasons warrant such a reduction," after the defendant has asked the Bureau of Prisons ("BOP") and fully exhausted administrative appeals following denial of the request. 18 U.S.C. § 3582(c)(1)(A)(i).[1]

A defendant seeking relief under § 3582(c)(1)(A) has the burden of establishing that compassionate release is warranted. *United States v. Owens*, No. 7:08-cr-31, 2021 WL 4975273, at *2 (W.D. Va. Oct. 26, 2021). If a defendant has shown that extraordinary and compelling reasons support a sentence reduction, the Court must consider the applicable factors under 18 U.S.C. § 3553(a) to determine whether a reduction is appropriate. *See* 18 U.S.C. § 3582(c)(1)(A). A district court has "broad discretion in conducting this analysis." *United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021).

## Analysis

### I.     Bryant does not meet the statutory requirement of "extraordinary and compelling" reasons for compassionate release.

The Court concludes that it cannot grant Bryant's motion because his situation does not meet the high bar of "extraordinary and compelling reasons" under which it may reduce a sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). *See also* U.S.S.G. § 1B1.13.

The Fourth Circuit has held that "district courts are empowered to consider *any* extraordinary and compelling reason for release that a defendant might raise." *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) (internal quotation marks and citation omitted). The

---

[1] The Court will not consider the question of administrative exhaustion. Since exhaustion was not raised in the Government's opposition, Dkt. 1972, the Court considers the issue to be waived. *See United States v. Simon*, No. 20-6701, 2022 WL 337126, at *2 (4th Cir. Feb. 4, 2022) (unpublished) (stating that the Court may not raise *sua sponte* raise the issue of exhaustion).

Court will therefore consider each of the reasons that Bryant offers in his motion both individually and in combination.

    *a.   Halfway house placement*

First, as noted above, Bryant posits that it is possible that he will not have maximum time placed in a Residential Reentry Center, (i.e. a "halfway house.") Dkt. 1965 at 1. He states that "halfway houses across the nation are over capacity." *Id.* Pursuant to 18 U.S.C. § 3621(b)(4)(B), the district court that imposed a prisoner's sentence may issue a non-binding, strictly advisory recommendation that the prisoner be placed in a halfway house for the final 12 months of their sentence. *United States v. Ferguson*, No. 6:16-cr-00707-JMC-8, 2018 WL 5095149 (D.S.C. Oct. 19, 2018); *United States v. Smith*, No. 6:15-cr-00006-001, 2019 WL 4016211 (W.D. Va. Aug. 26, 2019). This Court did so in Bryant's case, and issued such a non-binding and strictly advisory recommendation to the BOP that he be placed in a halfway house for the last twelve months of his sentence. Dkt. 1953 at 1–2. The BOP, rather than the Court, has the authority to "designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b).

Hence, the BOP's authority to place Bryant contrary to a sentencing court's recommendation is a circumstance that Bryant shares with *all* federal inmates. Bryant has offered no individualized circumstances in his case that approach "extraordinary and compelling" reasons for a reduction. Moreover, at this point, the possibility that he "will not receive maximum halfway house time[,]" Dkt. 1965 at 1, is a speculative issue.

    The Court cannot conclude that the possibility that the BOP will opt to schedule Bryant for less-than-maximum halfway house time approaches the threshold of an extraordinary and compelling reason. Even if the possibility became a reality and the BOP did in fact opt not to place Bryant in a halfway house, that decision is within the BOP's authority. *Id.* In short, denial

of halfway house time, whether actual or theoretical, cannot qualify as an "extraordinary and compelling" circumstance for the purposes of 18 U.S.C. § 3582(c)(1)(A)(i) either alone or in combination with the other issues that Bryant offers in his Motion.

     *b. Length of sentence and amount of time served*

     Bryant next raises the length of time he has served "which is nearly 20 years, which is very close to 85% of [his] 300 month sentence[.]" Dkt. 1965 at 2. When considering whether the length of a sentence creates an extraordinary and compelling reason under 18 U.S.C. § 3582(c)(1)(A)(i), courts properly consider "the sheer and unusual length of the sentences" and "the gross disparity between those sentences and the sentences Congress now believes to be an appropriate penalty for the defendants' conduct." *McCoy* 981 F.3d at 285 (internal quotations omitted) (holding that sentence reduction was warranted where the defendant had been sentenced to 57 years' incarceration due to a 30-year mandatory minimum on two counts of possessing a firearm in furtherance of a drug trafficking crime, where he would have received a much shorter sentence after the passage of the First Step Act).

     The Court cannot conclude that Bryant's 300-month sentence, considered in light of these factors, presents an "extraordinary and compelling reason." In 2020, pursuant to a First Step Act Motion, this Court reduced Bryant's sentence from life imprisonment, with 120 months to run consecutively, to his current sentence of 300 months. Dkt. 1905 at 1–2. This sentence was a downward variance from Bryant's Advisory Guideline range of 292 to 365 months with 120 months to run consecutively. *Id.* at 2. Where a defendant is serving a sentence *below* the Advisory Guidelines range given his offenses and criminal history, to conclude that the sentence demonstrates "sheer and unusual" length would strain against the facts.

The Court will also consider whether there is a "gross disparity" between Bryant's sentence and that which Congress believes to be an appropriate penalty. As stated above, the Court already reduced Bryant's sentence pursuant to the First Step Act. Dkt. 1905. Hence, any sentencing disparity stemming from changes in the appropriate penalty has already been addressed. In light of this the court cannot find a "gross disparity" as to Bryant's current 300-month sentence. It does not provide any grounds to find "extraordinary and compelling" reasons for compassionate release.

   c.   *Rehabilitation*

Bryant next argues that the "multitude of redemptive and rehabilitative measures" he has undertaken present extraordinary and compelling reasons for release. Dkt. 1965 at 2. He states that since "[his] last motion" he has "completed the Victim Impact class and graduated from the Life Connections Program … [which] is an 18-month program." *Id.* at 1. He also states that he has "worked [his] way down" from high- to low-security placement. *Id.* at 2.

Rehabilitation can be considered as "one among other factors" but cannot serve independently as an extraordinary and compelling reason for compassionate release. *McCoy*, 981 F.3d at 286 n.9; 28 U.S.C.§ 994 (t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.")

 Here Bryant has offered, in conjunction with his rehabilitation, the fact that he is nearing the end of his sentence and may not receive maximum halfway house time. As discussed above, those circumstances are not such that the Court can consider them to be extraordinary and compelling. Nor do they come close enough to that demanding threshold that the Court could find that they are "extraordinary and compelling" when combined with Bryant's rehabilitative measures.

*d. Role in the Charlottesville community*

Bryant next argues that his "potential to help curb the ongoing and rapidly escalating violence among Charlottesville's youth" supports his request for a sentence reduction. Dkt. 1965 at 2. He states that he has reached out to existing community nonprofits and developed plans to positively impact the community and ultimately to form his own nonprofit. *Id.* at 1. Bryant also contends that "[his] presence in the community will be much more valuable than [his] presence in prison for the next few months." *Id.* at 2. Insofar as this presents an argument distinct from Bryant's general statement that he has achieved significant rehabilitation, the Court will consider it independently.

The Court applauds Bryant's efforts toward positive change. However, the "extraordinary and compelling reason" requirement is an exacting one, particularly as it relates to the role that an incarcerated person would play in the lives of others if released. For example, the Sentencing Commission policy statement as to when family circumstances comprise "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A) identifies two situations: "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" and "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13. Application Note 1(C).[2]

The second situation requires that the incarcerated person be the *only* one who can fill a need for caretaking in his or her family. As to the first, courts considering inmate-filed motions

---

[2] U.S.S.G. § 1B1.13 applies to motions filed by the BOP rather than by an inmate, and so should not be treated as dispositive; nevertheless, the Court can turn to it for guidance. *See McCoy*, 981 F.3d at 282 n.7 (4th Cir. 2020).

have required a similar showing: "Where a where a caretaker is struggling to care for a child, but not incapacitated, courts have denied compassionate release." *United States v. Lottier*, No. 7:16-CR-00030, 2022 WL 1522220, at *3 (W.D. Va. May 13, 2022) (collecting cases and finding no "extraordinary and compelling" reason where an inmate argued that his minor child's grandparents, because of health problems, were no longer "the best care [caretakers]").

Bryant does not argue that he will fulfil a caretaker role in his family; rather, he requests that the Court consider his motion in light of the provision for "other reasons" U.S.S.G. § 1B1.13, Application Note 1(D). However, the situation is analogous to that in *Lottier* in that Bryant argues that he has the potential to improve on community caretaking already being performed by some organizations in the Charlottesville community. Dkt. 1965 at 1–2. He states that he has reached out to the Uhuru Foundation and the Buck Squad and aims to form his own nonprofit. *Id.* at 1. Even assuming that all Bryant claims about his violence-disrupting influence in the community is true, simply based on the information in his Motion, there is no factual basis for a finding that Bryant is the *only* person who can play a positive, violence-disrupting role among Charlottesville youth. And while Bryant's goal of serving as a positive presence for youth is a laudable one, the community-focused role that he describes lacks the *necessity* inherent in the caretaking role of a parent of minor children or the spouse of an incapacitated person.

The argument that Bryant will make material contributions to ongoing work within the community does not, alone or in combination with the other reasons he posits, reach the "extraordinary and compelling" threshold that 18 U.S.C. § 3582(c)(1)(A)(i) requires for the Court to grant this compassionate relief request under 18 U.S.C. § 3582(c)(1)(A)(i).[3]

---

[3]  Because the Court cannot grant the Motion for Compassionate Release, it likewise lacks authority to convert the remainder of Bryant's sentence to home confinement. *See United States v. Simon*, No. 20-6701, 2022 WL 337126, at *1 (4th Cir. Feb. 4, 2022) (unpublished)

Because Bryant has not presented extraordinary and compelling circumstances, the Court's analysis does not reach the stage of considering applicable § 3553(a) factors.[4]

### Conclusion

For the reasons stated herein, the Court **DENIES** Bryant's motion for compassionate release, Dkt. 1965.

The Clerk of Court is directed to send this Opinion and Order to Defendant and all counsel of record.

It is so **ORDERED**.

Entered this <u>12th</u> day of March, 2024.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

---

(stating that a district court lacks authority to convert a custodial sentence to home confinement where a motion for compassionate release was denied).

[4] Bryant notes that prior denials of his motions have referred to his involvement with the distribution of PCP and heroin but that he was not convicted of offenses involving these substances. Dkt. 1965 at 2. While this is accurate, Bryant's Presentencing Investigation Report includes reference to Bryant's criminal conspiracy distributing the drugs in question. Dkt. 1152 ¶ 33. Bryant filed no objections to the PSR. Material in the PSR other than Bryant's specific offenses of conviction were relevant to prior § 3553(a) analyses, such as those addressing the factor of his history and characteristics. However, the distribution of PCP and heroin, or the lack thereof, have no bearing on the Court's analysis of Bryant's current Motion.

Bryant also states that he "wish[es] to point out that the 120 month sentence for attempted murder was satisfied years ago." Dkt. 1965 at 2. However, this has no bearing on the Court's analysis of his current motion, and moreover 18 U.S.C. § 3584 (c) provides that "Multiple terms of imprisonment ordered to run consecutively or concurrently shall be treated for administrative purposes as a single, aggregate term of imprisonment."